ELIAS BACH & SONS ET AL. V. SMITH-PATTISON MFG. CO.

PREFERENCES GIVEN FOR LOANS IN FINANCIAL PANIC HELD GOOD.

A contract by which a corporation hard pressed for money during a financial panic, transfers certain accounts and pledges certain property as security for loans negotiated in good faith from persons not creditors.

Bach v. Manufacturing Co.

is valid, and the parties making such loans should be preferred over the general creditors upon distribution of funds in the hands of a receiver subsequently appointed to wind up its affairs.

[Syllabus approved by the court.]

Error to superior court of Cincinnati.

**Moulinier, Bettman & Hunt,** for plaintiffs.
**Healy, Ferris & McAvoy,** for defendant.

**SWING, J.**

This cause is in this court on error to the judgment of the superior court. That court gave judgment on the rights of parties to a fund which was in the hands of the court through a receiver which it had appointed to take charge of the Smith-Pattison Co. The amount involved is quite large and the trial below occupied a very considerable time, and in this court the case was fully argued orally, and very full and able briefs containing almost a hundred pages, with a great number of authorities cited, have been submitted and considered. In deciding the case we will not attempt to comment on the authorities cited, nor to review at length the evidence, but simply state our conclusions as to the law and the evidence.

The court below found in favor of the claims of E. M. Pattison and John G. Robinson, and in doing so the general creditors of the insolvent firm of Smith-Pattison Co. claim error was committed. The Smith-Pattison Co. was a firm of $125,000 capital, of which nearly $100,000 had been paid in. The firm was located in Cincinnati, and was engaged in the manufacture and sale of cigars. The evidence tends to show that they expended some $60,000 in advertising and introducing their brands of cigars.

In October, 1907, when the panic was at its worst, the company was hard pressed for funds, and the bank at which it was doing business denied it further credit, and demanded payment of loans already made, and refused to honor checks on funds to its credit in the bank. In order to save the firm from immediate ruin it became necessary to raise $20,000 from other sources than the bank. This it did by borrowing $15,000 from E. M. Pattison and $5,000 from John G. Robinson. To secure this money the company assigned to Pattison and Robinson certain choses in action, to wit, certain book accounts. The notes given by the company for these loans were payable on demand. It was provided in the agreement that if the note was not paid and while the debt existed, that when certain of the accounts were paid instead of paying the different sums over to Pattison and Robinson, other good

accounts which the company had might be substituted from time to time, and this was done. The object of Pattison and Robinson in lending this money to the firm was to aid the firm in its financial difficulty as well as to secure themselves for the loan. Pattison's son was a member of the firm and Robinson himself was a large stockholder as well as an officer of the firm. They were not seeking an investment for their funds nor were they seeking to take advantage of the firm or its creditors, but on the other hand were trying to help both. There can be no question as to the good faith of any of the parties to this transaction, and justice requires that it should be carried out unless it is contrary to well settled principles of the law. The questions that have frequently arisen where an insolvent concern seeks to prefer one creditor over another have no relation to this transaction.

Pattison and Robinson were not creditors of this company. They did not seek to get control of this company or any of its property. The company sought Pattison's and Robinson's money, which it, the company, sorely needed, and to secure repayment to them gave the security referred to. The general creditors were benefited by this and not injured, and it would be manifestly unjust that the general creditors should now take away the money of Pattison and Robinson which was loaned to the company for their benefit. We think the contract made by the parties was a valid contract and in enforcing it the court below was right.

Later in the same year, to wit, December 28, the company was pressed for funds to carry on its business, and it sought the same parties for help, and this was given, $5,000 being loaned on that day and $4,000 on January 14, 1908. The amount agreed to be loaned the company by Pattison and Robinson was $9,000. The same remarks, *supra*, in regard to the relations of the parties applies equally here. Pattison and Robinson sought no advantage of the company, but the company needed Pattison's and Robinson's money, and all Pattison and Robinson asked was a return of the money and security from the company that it should be returned. This, of course, the company represented to Pattison and Robinson it was anxious and willing to do. In substance the agreement was that it would pledge to Pattison and Robinson any chattel property that it had and which Pattison and Robinson should take.

The company did not act promptly in putting its property in pledge, but in accordance with its agreement it did carry it out by placing certain cigars in the possession, as we hold, of Pattison and

Bach v. Manufacturing Co.

Robinson. The pledge as made fulfilled every requirement of the law, and the court decided rightly in giving effect to the contract of the parties. It would have been a great injustice to have held otherwise.

Judgment affirmed.

**Giffen** and **Smith, JJ.,** concur.

---

## DESCENT AND DISTRIBUTION—WILLS.

[Knox (5th) Circuit Court, 1907.]

Taggart and Donahue, JJ.

(McCarty, J., not sitting.)